FILED _____   LODGED _____
RECEIVED _____   COPY _____

OCT 25 2007

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ S  DEPUTY

1  Neal David Sutz
   In Pro Per
2  2821 E. Kathleen Road, #203
   Phoenix, Arizona 85032
3  (602)617-1230

4             UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF ARIZONA
5

6

7                    CV-04-1540-PHX-NVW

8  _____
   Neal David Sutz, an individual      )
9                                       )
              Plaintiff,                )
10      vs.                             )
                                        )   Motion For Rescission of
11  Phillip C. McGraw, Ph.D., an        )   Settlement Agreement, Oral
    individual, Oprah G. Winfrey,       )   Argument Requested, Request
12  an individual, CBS Paramount        )   For All Parties To Be Present
    Television, Harpo Productions,      )
13  Inc., Peteski Productions, and      )
    Does 1 through 100                  )
14                                      )
              Defendants.               )
15  _____)

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JURISDICTION**

2  1.   This court has jurisdiction over this case as Plaintiff resides

3       in the State of Arizona.

4

5

**INTRODUCTION**

6      This complaint seeks rescission of a formerly-agreed-to

7  Settlement Agreement(encl. #1) signed on October 15th, 2004, between

8  Plaintiff and Defendants, indicating that, by intentional acts to

9  deceive Plaintiff, and lack of intention to fulfill an agreement,

10 Defendants induced Plaintiff into signing the aforementioned

11 settlement agreement through the use of fraudulent

12 misrepresentation.  All six elements required by law to show that

13 fraudulent misrepresentation was used are detailed in the,

14 "Statement of Facts" of this complaint.

15

16

**THE PARTIES**

17 1.   Plaintiff, NEAL DAVID SUTZ, is an individual who resides in

18      Maricopa County, at 2821 E. Kathleen Road, #203, Phoenix,

19      Arizona 85032.

20 2.   Defendant, DR. PHILLIP C. MCGRAW, is an individual who hosts a

21      nationally-syndicated television show entitled, "Dr. Phil," in

22      Los Angeles, California, at 5555 Melrose Avenue, Roddenberry

23      Building, Hollywood, CA 90038.

24 3.   Defendant, OPRAH G. WINFREY, is an individual who is a co-

25      producer of the "Dr. Phil" television show, and holds her

26      business office at 110 N. Carpenter Street, Chicago, Illinois,

27      60607.

28 4.   Defendant, Harpo Productions, Inc., is a television production

1   company which is a co-producer of the "Dr. Phil" television

2   show, and is located at 110 N. Carpenter Street, Chicago,

3   Illinois, 60607.

4   5.   Defendant, CBS Paramount Television, is a television production

5   company which is the primary producer of the "Dr. Phil"

6   television show, and is located at 7800 Beverly Boulevard, Los

7   Angeles, California, 90036.

8   6.   Peteski Productions, Inc., is a television production company

9   which is a co-producer of the "Dr. Phil" television show, and

10   is located at 5555 Melrose Avenue, Roddenberry Building,

11   Hollywood, California, 90038.

12

13   **STATEMENT OF FACTS**

14   This motion is to show, by law, that Defendants used fraudulent

15   misrepresentation to induce Plaintiff into signing a settlement

16   agreement on October 15th, 2004.

17   Plaintiff had, by phone communications from his home in Mesa,

18   Arizona, spoken with CBS Paramount Television, then named Paramount

19   Pictures Corporation, and the staff of the Dr. Phil television show,

20   with the intent of receiving two tickets to attend this television

21   talk show as an audience member and was given tickets for a taping

22   of the aforementioned television show for September 19, 2003.

23   Plaintiff drove from his home in Mesa, Arizona on the September

24   18, 2003, spent the night at the home of a colleague, and drove, on

25   the morning of September 19, 2003, to Hollywood to attend the

26   aforementioned taping of the television show, "Dr. Phil" at the

27   Paramount Pictures Corporation studio at 5555 Melrose Avenue,

28   Roddenberry Building, Hollywood, California, 90038.

3

1        Following a period of approximately one hour in line with other

2   prospective audience members outside the television studio on the

3   Gower Boulevard side of the studio, Plaintiff passed through the

4   security entrance.  At this point, Plaintiff was asked to empty his

5   pockets and remove any metal or other items from his possession that

6   might set off the body-scanning security mechanism that Plaintiff

7   was asked to walk through.

8        Once passed through the primary security entrance, having been

9   asked to leave all his personal belongings for pick-up after the

10  taping of that day's episode of the aforementioned television show,

11  Plaintiff was given a "Studio Audience Release"(encl. #2), which

12  Plaintiff was asked to read, sign and return to a Paramount/Dr.Phil

13  staff member before being permitted to enter the studio for taping.

14       Plaintiff sat with other prospective audience members and

15  proceeded to read the aforementioned "Studio Audience Release."  It

16  was after reading Item #2 on the Studio Audience Release that

17  Plaintiff asked to speak with a producer or Dr. Phil Show staff

18  member.

19       ITEM #2 - "I represent that I do not suffer from a mental

20  illness and am not currently under psychiatric care."

21       Plaintiff proceeded to inform Defendant staff member that

22  Plaintiff suffered from bipolar disorder and was not comfortable

23  signing a form denying that he had this physical disability.

24  Plaintiff further explained that not only did Plaintiff suffer from

25  bipolar disorder, but that he also took medication for this

26  disorder, as well as participated in regular therapy sessions with a

27  licensed mental health professional.

28       Defendant staff member informed Plaintiff that if Plaintiff

4

1   wished to proceed into the studio to be an audience member as he was

2   formerly assured he would be able to, that Plaintiff and Defendant

3   could each place their initials beside Item #2 of the "Studio

4   Audience Release" and to sign their names on the bottom of the

5   aforementioned Release.

6        Defendant proceeded to inform Plaintiff that Plaintiff could

7   enter the studio for the taping of that day's episode of "Dr. Phil,"

8   but "ONLY" under the strict conditions that Plaintiff would not be

9   permitted to speak during the show, or to in any manner communicate

10  with Dr. Phil, any staff and show members or in any way participate

11  in that day's show taping.  Plaintiff was the only individual

12  singled out and informed that his right to free speech was going to

13  be prohibited if he wished to be, along with hundreds of other

14  persons, a studio audience member.

15       Hence, Plaintiff was denied the same access, benefits and free

16  speech rights as all other studio audience members on the date of

17  the incident of which this complaint is subject.

18       Plaintiff, at this point in the interaction and of his own

19  will, left the CBS Paramount Television studio and did not enter as

20  an audience member as an equal to all the other audience members

21  because he was not permitted to.

22       Following the aforementioned incident, Plaintiff filed a

23  complaint is this U.S. Federal Court, claiming that his rights were

24  violated under The Americans With Disabilities Act of 1990.

25       Plaintiff was invited on numerous national television and radio

26  programs to discuss his complaint of the Dr. Phil show.  In these

27  interviews, he discussed two matters.

28       First, that there was discriminatory wording in the studio

1   audience release that Defendants demanded Plaintiff sign before

2   being allowed to be an audience member.  Two, that there needed to

3   be a written disclaimer on the beginning of the Dr. Phil show,

4   indicating to viewers that the show was for entertainment purposes

5   only and that medical advice or psychological therapy was not being

6   given by Dr. Phillip C. McGraw, the host of the show.

7        Plaintiff's mission in filing suit against Defendants was

8   three-part.  One, to see that the discriminatory actions on

9   Defendants part ceased immediately so that no other parties with

10  disabilities were discriminated against.  Two, to take the

11  discriminatory wording out of the Studio Audience Release, thereby

12  no longer requiring potential audience members to disclose their

13  psychiatric histories to the show's producers.  Three, to see that

14  an on-screen disclaimer was put at the beginning of the Dr. Phil

15  Show.

16       After Plaintiff's filing of the aforementioned complaint with

17  this court, and appearing as a guest on numerous nationally-

18  broadcasted television and radio programs, Defendants modified the

19  aforementioned "Studio Audience Release" in that they removed the

20  discriminatory wording of the aforementioned Release.(see encl.#3 -

21  revised Studio Audience Release).

22       During the time period from the moment the original complaint

23  was filed, Plaintiff also suggested that a disclaimer should be

24  placed at the beginning of the Dr. Phil Show, indicating, among

25  other things, that the Dr. Phil Show was for entertainment purposes

26  and that the advice given on the show was intended only for each

27  specific show guest, and that the overall production of the show was

28  for informational purposes only.

6

1        After additional communication with Defendants' attorney,

2    Nicole A.J. Gustafson, Defendants placed a disclaimer on the top-to-

3    bottom, right-of-screen, fast-rolling credits of the Dr. Phil Show.

4    This disclaimer was on the screen, moving from the bottom of the

5    screen to the top of the screen for a period of no more than three

6    minutes.  Hence, it was completely ineligible for the television

7    viewers to read and understand.

8        As this version of the disclaimer was completely ineligible,

9    and having been invited on "Good Morning America," a nationally-

10   broadcasted morning television talk show, Plaintiff and show host,

11   Diane Sawyer, showed the aforementioned disclaimer.  Plaintiff

12   indicated to Ms. Sawyer that the disclaimer was ineligible to the

13   viewing audience.

14       Within one month of the broadcasting of the aforementioned

15   television interview, the producers of the Dr. Phil Show changed the

16   disclaimer to a place where it was on the bottom of the television

17   screen for approximately 15-20 seconds at the end of the show's

18   credits, a time in which it was finally possible for the disclaimer

19   to be read and understood by the television viewers.

20       Feeling as though he had accomplished some of what he hoped to

21   in his complaint, Plaintiff agreed to a settlement with Defendants.

22   Settlement did not include monetary damages, but simply laid out the

23   details of Defendant and Plaintiff's positions, as well as

24   containing a confidentiality clause that the details of the dispute.

25       Plaintiff is not claiming a breech of contract, as the

26   Settlement Agreement did not include any wording that the disclaimer

27   would continue to be on the show's ending credits.

28       It was only through verbal promises made by Defendants, through

1  their attorney, that Plaintiff was made to believe that the

2  disclaimer which he requested be put on the show's ending credits

3  would forever continue to be on the show's ending credits for a time

4  period long enough for it to be read and understood by all the

5  program's viewers.

6          In summary, Plaintiff's request for the disclaimer was the main

7  subject of this dispute.  It was only through taking Defendants'

8  good word that the disclaimer would continue to be legible and

9  permanent on the show's ending credits that Plaintiff agreed to sign

10  the Settlement Agreement.

11         Three years later, on August 8, 2007, Plaintiff happened to be

12  watching the tail end of the Dr. Phil Show.  He noticed that the

13  aforementioned disclaimer was only on screen for a period no longer

14  than four seconds, a time period in which it was literally

15  impossible for anyone to read and understand it.

16         Plaintiff presumed, on that date, that it must have been a

17  technical error for the disclaimer to be on the screen for only four

18  seconds, so he watched the Dr. Phil Show credits again the following

19  day.  Again, the disclaimer was only on the screen for no more than

20  four seconds and was completely ineligible and unable to be read in

21  its entirety.  So, Plaintiff watched nearly one dozen episodes of

22  the program over the course of the next two months and, to his

23  surprise, found the disclaimer, numerous times, to be on the screen

24  for only a few seconds and to be completely unable to be read by a

25  viewer in its entirety.

26         However, after the incident of August 8, 2007, and one half

27  dozen other episodes which Plaintiff watched and recorded on video

28  cassette, Plaintiff believes that he was induced into signing the

1    Settlement Agreement based upon fraudulent misrepresentation, in

2    that Defendants assured Plaintiff that the disclaimer would continue

3    to be on the show permanently and for a time period long enough for

4    it to be read and understood by viewers.  To reiterate, for the

5    court to understand, it must be noted again that the only reason

6    Plaintiff signed the Settlement Agreement was because he was made to

7    believe, by Defendants' attorney, that the disclaimer which he

8    fought so hard to have one the show's ending credits would be, for

9    the life of the Dr. Phil Show, on the screen long enough for it to

10    be read and understood by a television viewer with an average

11    reading speed of 220 words per minute.  Please note that the average

12    reading speed of an American citizen is approximately 220 words per

13    minute.

14      As the public, media personalities and the Defendants knew,

15    Plaintiff's major complaint in the process of his claims, in

16    addition to the removal of the discriminatory wording in the "Studio

17    Audience Release," was that the Dr. Phil Show did not, before

18    Plaintiff's filing of a federal lawsuit, have the aforementioned on-

19    screen disclaimer.

20      It was only through Plaintiff's filing of a lawsuit against

21    Defendants, and numerous nationally-broadcasted interviews, that the

22    subject of a disclaimer came up.  And it was ONLY through

23    Plaintiff's pressure on Defendants that Defendants placed the

24    disclaimer on the show's credits.

25      Due to his lack of experience in the legal world, Plaintiff

26    took the word of Defendants that the disclaimer which he fought to

27    have placed on the Dr. Phil Show would be, for the life of the Dr.

28    Phil Show, for a time period long enough for it to be read and

1 | understood by all the show's television viewers.

2 |     Plaintiff acknowledges that the disclaimer was not mandated in

3 | the Settlement Agreement.  However, Plaintiff respectfully asks the

4 | court to see that the disclaimer was the base subject of Plaintiff's

5 | agreement to sign the Settlement Agreement.

6 |     In September of 2007, Plaintiff contacted Defendants' attorney,

7 | informing them of his claim of fraudulent misrepresentation and

8 | asked Defendants' lawyer why the disclaimer had been changed.

9 |     Defendants' lawyer informed Plaintiff that the production staff

10 | of the Dr. Phil Show did not, and had never, changed the on-screen

11 | disclaimer in any way, shape or form.  This claim by Defendants was

12 | made and claimed to be truth despite the fact that Plaintiff had,

13 | and has, video-recorded evidence, of numerous broadcasts of the show

14 | since August 8, 2007, showing clearly as evidence that the

15 | disclaimer was changed in the amount of time it is on screen and is,

16 | again as it was with the original disclaimer, only on screen for a

17 | few seconds and is unable to be read and understood by a television

18 | viewer.

19 |     In summary, Plaintiff took the good word of Defendants that the

20 | disclaimer would, for the life of the Dr. Phil Show, be on the

21 | screen long enough for it to be read and understood by a television

22 | viewer.  Further, it must be understood that Defendants never had

23 | the intention of keeping the disclaimer on screen for a sufficient

24 | time for it to be read and understood by a viewer.

25 |     Additionally, it must be noted that Defendants intimidated

26 | Plaintiff and took advantage of his legal naivete, as Plaintiff was

27 | representing himself in this matter, and coerced him into signing

28 | the Settlement Agreement to shut him up and keep him from making the

1   aforementioned or further claims against Defendants.  Plaintiff's

2   evidence, which he hopes the court will allow him to show in court

3   during oral arguments, portrays clearly that Defendants never had

4   the intention of fulfilling their promises to keep the disclaimer on

5   screen for a time period long enough for it to be read and

6   understood by a television viewer.

7       Further, Plaintiff's reasoning for filing this Motion For

8   Rescission of the Settlement Agreement is so that Plaintiff may file

9   a new complaint in California Superior Court, claiming he was

10  discriminated against, as detailed above, on September 19, 2003, by

11  Dr. Phil Show producers, under the The Unruh Civil Rights Act of

12  1959.  Details of the discrimination are detailed in the beginning

13  of this Motion, under "Statement of Facts."

14      Never, during the course of Plaintiff's original complaint, or

15  during Plaintiff's numerous media appearances, did Defendants deny

16  the claimed discrimination.  Their lack of denial shows clearly that

17  Plaintiff's claim of discrimination has merit and so Plaintiff

18  respectfully asks the court to approve the Rescission of which this

19  Motion is subject, so that Plaintiff may continue forth and file a

20  discrimination complaint in California Superior Court, detailing the

21  aforementioned discrimination.

22      Defendants simply shut Plaintiff up through inducing Plaintiff

23  into signing the Settlement Agreement through the use of fraudulent

24  misrepresentation, i.e. promising the on-screen disclaimer would be

25  on the show, for the life of the show, for a time period long enough

26  for it to be read and understood by any viewing member.

27      All six elements to show Fraudulent Misrepresentation are

28  detailed below in the section, "Six Elements To Prove Fraudulent

11

1   Misrepresentation."

2

3           SIX ELEMENTS TO PROVE FRAUDULENT MISREPRESENTATION

4        Despite the fact that Plaintiff signed the attached Settlement

5   Agreement, part of which said, "...No promises or inducements have

6   been made to him except as set forth in this agreement...", the

7   aforementioned Statement of Facts, as well as the following six

8   elements to prove fraudulent misrepresentation clearly indicate that

9   Plaintiff was induced into signing the Settlement Agreement based

10  upon numerous verbal promises made by Defendants.

11

12  The elements of fraudulent misrepresentation are as follows:

13      1.      a false representation is made; –

14          a.   –   The Defendants, through their attorney, assured

15                   Plaintiff numerous times that the disclaimer which

16                   is currently at the end of the Dr. Phil Show would

17                   be, for the life of the Dr. Phil Show, on the screen

18                   for a time period long enough for the average reader

19                   to read and understand it.  This disclaimer was

20                   first put on the Dr. Phil Show after numerous

21                   complaints which the Plaintiff made, written, oral

22                   and through various media appearances nationally.

23                   It was requested by the Plaintiff, a man who has a

24                   serious mental illness(SMI), bipolar disorder, as

25                   declared by a Nationally-licensed psychiatric care

26                   facility, as a protective mechanism on the behalf of

27                   himself and the 54 million other mentally ill

28                   persons in The United States, to assure that, among

1      those 54 million, many of whom are daily viewers of

2      the Dr. Phil Show, that it was clearly portrayed to

3      each and every viewer that the Dr. Phil Show is for

4      entertainment purposes only and that the advice that

5      . Dr. Phillip C. McGraw gives on the show is intended

6      only for the individual(s) on the stage of whom each

7      individual show is subject.

8   2.   which is material to the transaction;

9      a.   -   The fraudulent misrepresentation is material to the

10      transaction because the Plaintiff believed that the

11      defendants were truly going to maintain their word

12      of keeping the disclaimer on the Dr. Phil Show as

13      agreed and promised.

14   3.   which is made with knowledge of its falsity or reckless

15      disregard as to whether it was true or false;

16      a.   -   The fraudulent misrepresentation was made by

17      defendants with no regard for whether or not they

18      would follow through on their promise of keeping the

19      disclaimer on the Dr. Phil Show as agreed and

20      promised.

21   4.   with the intention by the person making the

22      representation that the recipient will be induced to act

23      or refrain from acting;

24      a.   -   The Plaintiff was induced into signing the

25      settlement agreement, and relinquishing his interest

26      in pursuing further legal remedies allowed by law,

27      solely as a result of Defendants good word that the

28      disclaimer would be on the show as agreed.

5.     which representation is justifiably relied upon by the

recipient; and

   a.  -  Plaintiff, based upon promise by Defendants, had

every reason to rely upon the good word of the

Defendants and so signed the settlement agreement as

written and offered to Plaintiff by Defendants.

6.     which reliance proximately causes the recipient to suffer

damages.

   a.  -  Damages, including severe mental and emotional

suffering, suffered by Plaintiff are clear in that

Plaintiff was literally swept under the rug and

taken advantage of by Defendants due to his

inexperience in the legal world and convinced by

Defendants that they sincerely cared about his

mental health and well-being, in that the disclaimer

which Plaintiff fought to have placed on the Dr.

Phil Show, was for the protection of Plaintiff's

fragile mental state, as well as the delicate mental

and emotional states of over 54 million persons in

The United States, many of whom are regular viewers

of the Dr. Phil Show and take Dr. Phil's advice and

counsel, as expressed by him on his daily,

nationally-syndicated television show, as the truth

given by a supposed mental health professional who

makes his living from giving advice, direction and

counsel to millions on a daily, week-day basis.

**ORAL ARGUMENT REQUESTED**

1    So that Plaintiff may present his case orally, and defend his

2    position as outlined in this motion, offering specific details,

3    as well as video-recorded and written evidence, to the court to

4    assist the court in making its decision, as well as to show the

5    video cassette recorded evidence to the court, Plaintiff

6    respectfully asks the court to allow oral arguments before the

7    court on a date to be determined by the court.  Further

8    reasoning for the court to approve Plaintiff's motion to

9    request oral arguments are that Defendants have proven in the

10   past, and continue to prove, that it is with malicious intent

11   that they did, and continue to, exploit Plaintiff's legal

12   naivete and lack of experience.

13

14                  **REQUEST FOR ALL DEFENDANTS TO BE PRESENT**

15       Plaintiff respectfully asks the court to require all

16   Defendants to be present at the hearing.  Plaintiff is not

17   attempting to make this case more complicated than it already

18   is, rather to have each party involved appear to

19   Plaintiff is quite sure that Defendants will say they can not

20   attend the hearing, in that they are too busy to do so, and ask

21   for only their lawyers to need to be present, but as Plaintiff

22   is willing to be present for the hearing, Plaintiff feels it is

23   only right that all Defendants be present in the court, as

24   well.

25

26           **REGARDING DEFENDANTS FORTHCOMING MOTION TO DISMISS**

27       Plaintiff also presumes that Defendants will file a

28   motion to dismiss Plaintiff's motion and respectfully asks the

15

1    court not to approve such a motion to dismiss for the simple

2    reason that Plaintiff has the right to make his case, in

3    person, and argue all points of this motion.

4

5

6

7

8

9

10

11

12

13                                    Dated this 25 day of

14                                    October, 2007

15                                    By _____

16                                    2821 E. Kathleen Road, #203

17                                    Phoenix, Arizona 85032

18                                    (602)617-1230

19                                    Neal David Sutz

20

21

22

23

24

25

26

27

28

ENCLOSURE # 1

PARAMOUNT PICTURES CORPORATION                                          DATE:_____
5555 Melrose Avenue
Hollywood, CA 90038

### DR. PHIL ("Series")

Produced by: **PARAMOUNT PICTURES CORPORATION ("Producer")**    **B №**    **068**

### STUDIO AUDIENCE RELEASE

1. I agree to appear without pay as a guest on one (1) or more episode(s) of the Series (singularly or collectively, the "Episode").

2. I represent that I do not suffer from a mental illness and am not currently under psychiatric care. I further acknowledge that Dr. Phil McGraw, the host of the Series, does not and will not administer individual, group or medical therapy; and his advice, opinions or statements should not be considered individual, group or medical therapy or a substitute or replacement for those therapies.

3. You may use and reuse forever, and license others to use my name, voice, picture, materials and/or statements made by me during the taping of the Episode including the pre-show, post-show and commercial breaks for any use throughout the universe, in all media, including promotional use for the Series, Series' website and newsletter. I understand that once I enter the Paramount Pictures lot, I may be videotaped and recorded at any time. I give my consent to such taping and recording.

4. You may edit my appearance as you see fit and I understand that you have no obligation to use my appearance.

5. You agree not to use my name or picture so as to amount to a direct endorsement by me of any product or service. In addition, I agree not to use Producer's name or Dr. McGraw's name, voice, picture or likeness for promotional or advertising purposes. Specifically, I agree not to use Producer's or Dr. McGraw's name, likeness, or a quote from *Dr. Phil* or Dr. McGraw, on or in connection with the marketing or advertising of any book or other publication, product or service. Further, I agree that any products or services that I discuss on the Episode have been selected by me based on my own judgements and that I did not solicit nor have I accepted any money, service or other valuable consideration for the inclusion on the Episode of any such products or services or the mention of any manufacturers, retailers, wholesalers or providers of such products or services.

6. I acknowledge that I may voluntarily disclose personal and/or financial information about myself ("Personal Information") during the taping of the Episode and I agree that you may broadcast such disclosures in accordance with Paragraph 3 above. I represent that I own all materials I bring on the Series and have obtained all necessary releases from third parties who appear in the materials and grant you permission to use them in accordance with Paragraph 3 above.

7. I will never sue and I fully release and discharge, Producer, Harpo Productions, Inc. and/or their respective distributors, partners, joint venturers, successors, heirs, representatives, assigns, affiliates, licensees, agents, officers, directors, shareholders, employees and attorneys, and each of them (collectively, "Releasee") for any and all claims, demands and causes of action of every kind and nature which I may now have or may hereafter acquire arising out of or in connection with the Episode including, without limitation: (a) any claims, demands and causes of action for invasion of privacy or publicity, defamation, infliction of emotional distress and any other tort in connection therewith; (b) because I do not like the manner in which Producer granted and/or used my name, voice, appearance, Personal Information or other in the Episode (or derivative works); (c) because Producer did not conduct, tape and/or broadcast the Episode; (d) because I do not like the questions, responses or outcome of the Episode; and (e) because Producer did not fully disclose the subject matter of the Episode or the identity of other guests appearing on the Episode. I voluntarily assume the full risk of any injury (including, without limitation physical or emotional) to myself and/or others and/or damage or loss to any personal property or loss of income that may occur as a result of the conduct, taping and/or broadcast of the Episode (including, without limitation, the promotion, marketing, advertising and/or other exploitation related thereto or to the Series).

8. In signing this release, no promises have been made to me other than as set forth herein, and I have not relied on any representations or other statements that are not contained herein. I further agree that no oral agreements or amendments are binding on Producer unless and until reduced to writing and signed by a duly authorized officer of Producer.

I have carefully read this RELEASE and indicate my understanding and consent by signing below.

_____          _____
Legal Signature                                              Address

_____          _____          _____
Name (Printed)                                               Phone Number                                    Social Security Number

If the guest is under eighteen years of age: I approve the terms of this Release and guarantee performance by my child or ward. If custody of the minor is shared: I represent that I am the custodial parent with the authority to sign this Release binding my child or ward.

_____          _____
(Signature of Parent or Legal Guardian)                  Address

_____          _____          _____
Name (Printed)                                               Phone Number                                    Social Security Number

ENCLOSURE #2

PARAMOUNT PICTURES CORPORATION             DATE:_____
5555 Melrose Avenue
Hollywood, CA 90038

## DR. PHIL ("Series")

### Produced by: PARAMOUNT PICTURES CORPORATION ("Producer")

---

### STUDIO AUDIENCE RELEASE

1.  I agree to appear without pay as a guest on one (1) or more episode(s) of the Series (singularly or collectively, the "Episode").

2.  I acknowledge that Dr. Phillip C. McGraw, the host of the Series, does not and will not administer individual, group or medical therapy; and his advice, opinions or statements should not be considered individual, group or medical therapy or a substitute or replacement for those therapies.

3.  You may use and reuse forever, and license others to use my name, voice, picture, materials and/or statements made by me during the taping of the Episode including the pre-show, post-show and commercial breaks for any use throughout the universe, in all media, including promotional use for the Series, Series' website and newsletter. I understand that once I enter the Paramount Pictures lot, I may be videotaped and recorded at any time. I give my consent to such taping and recording.

4.  You may edit my appearance as you see fit and I understand that you have no obligation to use my appearance.

5.  You agree not to use my name or picture so as to amount to a direct endorsement by me of any product or service. In addition, I agree not to use Producer's name or Dr. McGraw's name, voice, picture or likeness for promotional or advertising purposes. Specifically, I agree not to use Producer's or Dr. McGraw's name, likeness, or a quote from *Dr. Phil* or Dr. McGraw, on or in connection with the marketing or advertising of any book or other publication, product or service. Further, I agree that any products or services that I discuss on the Episode have been selected by me based on my own judgements and that I did not solicit nor have I accepted any money, service or other valuable consideration for the inclusion on the Episode of any such products or services or the mention of any manufacturers, retailers, wholesalers or providers of such products or services.

6.  I acknowledge that I may voluntarily disclose personal and/or financial information about myself ("Personal Information") during the taping of the Episode and I agree that you may broadcast such disclosures in accordance with Paragraph 3 above. I represent that I own all materials I bring on the Series and have obtained all necessary releases from third parties who appear in the materials and grant you permission to use them in accordance with Paragraph 3 above.

7.  I will never sue and I fully release and discharge, Producer, Harpo Productions, Inc., Dr. Phillip C. McGraw and/or their respective distributors, partners, joint venturers, successors, heirs, representatives, assigns, affiliates, licensees, agents, officers, directors, shareholders, employees and attorneys, and each of them for any and all claims, demands and causes of action of every kind and nature which I may now have or may hereafter acquire arising out of or in connection with the Episode including, without limitation: (a) any claims, demands and causes of action for invasion of privacy or publicity, defamation, infliction of emotional distress and any other tort in connection therewith; (b) because I do not like the manner in which Producer granted and/or used my name, voice, appearance, Personal Information or other in the Episode (or derivative works); (c) because Producer did not conduct, tape and/or broadcast the Episode; (d) because I do not like the questions, responses or outcome of the Episode; and (e) because Producer did not fully disclose the subject matter of the Episode or the identity of other guests appearing on the Episode. I voluntarily assume the full risk of any loss or injury (including, without limitation, physical or emotional loss or loss of property or income) to myself and/or others that may occur as a result of the conduct, taping and/or broadcast of the Episode (including, without limitation, the promotion, marketing, advertising and/or other exploitation related thereto or to the Series).

8.  In signing this release, no promises have been made to me other than as set forth herein, and I have not relied on any representations or other statements that are not contained herein. I further agree that no oral agreements or amendments are binding on Producer unless and until reduced to writing and signed by a duly authorized officer of Producer.

I have carefully read this RELEASE and indicate my understanding and consent by signing below.

_____      _____
Legal Signature                                   Address

_____      _____    _____
Name (Printed)                               Phone Number            Social Security Number

If the guest is under eighteen years of age, I approve the terms of this Release and guarantee performance by my child or ward. If custody of the minor is shared, I represent that I am the custodial parent with the authority to sign this Release binding my child or ward.

_____      _____
(Signature of Parent or Legal Guardian)                   Address

_____      _____    _____
Name (Printed)                               Phone Number            Social Security Number

ENCLOSURE #3

COPY

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release of All Claims ("Agreement") is hereby entered into by and between Neal David Sutz (referred to herein as "Mr. Sutz") on the one side; and Paramount Pictures Corporation (referred to herein as the "Paramount"), on the other side. Mr. Sutz and Paramount are referred to collectively herein as the "Parties."

WHEREAS, on July 28, 2004, Mr. Sutz caused to be filed with the United States District Court for the District of Arizona the civil action entitled *Neal David Sutz v. Dr. Phillip C. McGraw, et al.*, Case No. No. CV-04-1540-PHX-NVW (the "Action") and subsequently amended on August 17, 2004 and September 27, 2004, respectively.

WHEREAS, the Action alleges, in pertinent part, claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA");

WHEREAS, the named defendants in the Action have denied Mr. Sutz's assertions in their entirety and deny that they have violated any law or legal or equitable obligation to Mr. Sutz;

WHEREFORE, the Parties now desire to avoid the expense and inconvenience of further litigation and therefore intend to permanently resolve any and all claims they had or may have against each other and thereby enter into this Agreement voluntarily; and

NOW, THEREFORE, in consideration of the promises and mutual covenants contained in this Agreement, Mr. Sutz and Paramount hereby agree as follows:

1. <u>Waives and Releases.</u>  (a) In exchange for the agreement of Paramount and Dr. Phillip C. McGraw to waive any and all claims against Mr. Sutz, including any claims to recover sanctions against Mr. Sutz, any claims to recover costs against Mr. Sutz, or maintain any action against Mr. Sutz as a result of his filing the Action, and other consideration provided for in this Agreement, Mr. Sutz irrevocably and unconditionally releases, remises, and forever discharges Paramount, Dr. Phillip C. McGraw, Harpo Productions, Oprah Winfrey and the Releasees from any and all agreements, promises, liabilities, claims and demands of any kind, in law or equity, whether known or unknown, suspected or unsuspected, which Mr. Sutz, his heirs, executors, administrators, successors or assigns ever had, or now have against them or any Releasee, from **ANY AND ALL RIGHTS, CLAIMS, DEMANDS, CAUSES OF ACTION, OBLIGATIONS, DAMAGES, PENALTIES, FEES, COSTS, EXPENSES, AND LIABILITY OF ANY NATURE WHATSOEVER WHICH MR. SUTZ HAS, HAD OR MAY HAVE HAD AGAINST THEM IN CONNECTION WITH ANY CAUSE OR MATTER WHATSOEVER, WHETHER KNOWN OR UNKNOWN TO PARAMOUNT, DR. PHILLIP C. MCGRAW, HARPO PRODUCTIONS OR OPRAH WINFREY AT THE TIME OF EXECUTION OF THIS AGREEMENT AND EXISTING FROM THE BEGINNING OF TIME TO THE DATE OF THE EXECUTION OF THIS RELEASE AND INCLUDING, WITHOUT LIMITATION, ALL MATTERS RELATED TO THE ACTION,** including violation by Paramount, Dr. Phillip C. McGraw, Harpo Productions, Oprah Winfrey and/or the Releasees of any federal, state or local statutes, ordinances or common law, including but not limited to the Americans with Disabilities Act, 42 U.S.C. § 1983, the California

Unruh Act, the California Civil Code, and the Arizonans with Disabilities Act. **By signing this Agreement, Mr. Sutz also agrees to FULLY WAIVE AND RELEASE ALL CLAIMS AND ALL CLAIMS FOR RELIEF** (e.g., claims for injunctive or declaratory relief, damages, attorneys' fees, expert's fees, costs, and any other element of relief or damages) whether known or unknown which Mr. Sutz claimed or could have claimed pursuant to the ADA regarding the Paramount, Dr. Phillip C. McGraw, Harpo Productions, and Oprah Winfrey (and any other federal, state, or local law governing physical access features for persons with disabilities at public accommodations) such as the claims and claims for relief that were asserted, or could have been asserted, in the above-captioned action or in another action in a different jurisdiction. For purposes of this Agreement, the term "the Releasees" includes any of the Paramount Pictures Corporation's or Harpo Production's past and present direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their past and present officers, directors, shareholders, representatives, employees, agents and attorneys, in their official and individual capacities, jointly and individually, as well as Dr. Phillip C. McGraw and Oprah Winfrey, and any and all of their executors, administrators, successors, assigns, agents, representatives, heirs and attorneys, and this Agreement shall inure to the benefit of, and shall be binding and enforceable by, all such entities and individuals. For purposes of this Agreement, the term "Plaintiff" shall mean and include Neal David Sutz, and any and all of his executors, administrators, successors, assigns, agents, representatives, heirs and attorneys, and this Agreement shall inure to the benefit of all such individuals and entities.

(b)     In exchange for Mr. Sutz's agreement to dismiss his claims in the Action and other consideration provided for in this Agreement, Paramount, Dr. Phillip C. McGraw, Harpo Productions, and Oprah Winfrey shall forever release Mr. Sutz from **ANY AND ALL RIGHTS, CLAIMS, DEMANDS, CAUSES OF ACTION, OBLIGATIONS, DAMAGES, PENALTIES, FEES, COSTS, EXPENSES, AND LIABILITY OF ANY NATURE WHATSOEVER WHICH THEY HAVE, HAD OR MAY HAVE HAD AGAINST MR. SUTZ IN CONNECTION WITH ANY CAUSE OR MATTER WHATSOEVER, WHETHER KNOWN OR UNKNOWN TO THE PARTIES AT THE TIME OF EXECUTION OF THIS AGREEMENT AND EXISTING FROM THE BEGINNING OF TIME TO THE DATE OF THE EXECUTION OF THIS RELEASE AND INCLUDING, WITHOUT LIMITATION, ALL MATTERS RELATED TO THE ACTION.**

2.    Confirmation. The *Dr. Phil* Show confirms that Mr. Sutz may attend the *Dr. Phil* Show as a member of the studio audience with the same entitlement as any other member of the public.

3.    No Compensation.  Mr. Sutz will not receive any compensation, payments or benefits of any kind from Paramount, Dr. Phillip C. McGraw, Harpo Productions, or Oprah Winfrey or the Releasees, and Mr. Sutz expressly acknowledges and agrees that he is not entitled to any compensation, payment or benefit from them whatsoever.

4.    Confidentiality. Mr. Sutz agrees to maintain the confidentiality of, and refrain from disclosing, making public, or discussing in any way whatsoever the terms and conditions of this Agreement, the fact of this Agreement and the facts or allegations underlying this Agreement. Notwithstanding the foregoing, it is understood that as the sole exception to this confidentiality

provision: (i) Mr. Sutz may discuss this Agreement with his attorneys and his family; and (ii) Mr. Sutz may disclose the circumstances of this Agreement and its terms as required by, or in response to inquiries from, any governmental, regulatory or self-regulatory body or agency, or if testifying under oath pursuant to subpoena or other legal process. To the extent that Mr. Sutz divulges the terms and conditions of this Agreement, the fact of this Agreement, or the facts or allegations underlying this Agreement to any of the individuals described above, he shall advise each such individual of this confidentiality provision and instruct each such individual of the confidential nature of this Agreement, and with respect to the individuals described in (i) above, he shall instruct such individuals that they must comply with the confidentiality terms of this Agreement and not divulge any of the terms and conditions thereof.

Paramount agrees that from this point forward the terms and conditions of this Agreement, the facts of this Agreement and the facts or allegations underlying this Agreement, shall remain confidential except for those people who need to know.

If the Parties believe that there has been a breach of this Paragraph 4, the Parties first will meet and confer and attempt to resolve the matter. If the dispute is not resolved, the matter shall be submitted to final and binding arbitration over the issues of whether a breach has occurred and appropriate damages. The arbitrator will be selected pursuant to the Rules of the American Arbitration Association. If the arbitrator finds that a breach has occurred, the Parties agree that the violation of Paragraph 4 shall constitute and be treated as a material breach of this Agreement. In any such action for breach of this Paragraph 4, the prevailing party in the action shall be entitled to an award of reasonable costs and attorneys' fees.

Notwithstanding this Paragraph 4, the Parties may state in response to inquiries that Mr. Sutz's differences with Paramount, Dr. Phillip C. McGraw, Harpo Productions, and Oprah Winfrey as set forth in the Action "have been amicably resolved."

5.   Withdrawal of Claims In The Action. Mr. Sutz agrees to voluntarily withdraw and dismiss with prejudice his claims in the Action. In that regard, after this Agreement has been executed by all parties, Mr. Sutz shall file a Stipulation of Dismissal, thereby withdrawing Mr. Sutz's claims in the Action.

6.   Withdrawal of Other Claims. Mr. Sutz shall withdraw any and all complaints or charges filed by him against the Paramount, Dr. Phillip C. McGraw, Harpo Productions, and Oprah Winfrey with the United States of America Department of Justice; State of California Department of Justice, Office of the Attorney General; State of Arizona, Office of the Attorney General; or any other government agency.

7.   Bar To Actions: This Agreement may be used to completely bar any action or suit before any court, arbitral, or administrative body with respect to any claim under federal, state, local, or other law relating to this Agreement or Mr. Sutz's claims of denial of equal public access and free speech rights, disability discrimination and/or civil rights violation by Paramount, Dr. Phillip C. McGraw, Harpo Productions, and Oprah Winfrey.

8.   Cal. Code § 1542. Mr. Sutz represents that it is his intention in executing this document that this Agreement shall be effective as a bar to each and every claim, demand, suit,

action, cause of action, debt and the Action herein above specified and not expressly excluded herein; and in furtherance of this intention Mr. Sutz **EXPRESSLY WAIVES ANY AND ALL RIGHTS AND BENEFITS CONFERRED BY THE PROVISIONS OF SECTION 1542 OF THE CIVIL CODE OF CALIFORNIA WHICH PROVIDES AS FOLLOWS:**

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

Notwithstanding Section 1542 of the Civil Code of California, Mr. Sutz expressly consents that this Agreement shall be given full force and effect according to each and all of its express terms and provisions including, as well, those relating to unknown and unspecified claims, demands, suits, actions, causes of action and debts, if any, and those relating to any other claims, demands, suits, actions, causes of action and debts hereinabove specified.

9. <u>Responsibility For Attorneys' Fees, Expenses and Costs.</u> Each party shall bear full responsibility for their own attorneys' fees, expenses, and costs related to this action.

10. <u>Cooperation.</u> Mr. Sutz shall cooperate fully and take all additional actions that may be necessary or appropriate to give full force or effect to the terms and intent of this Agreement.

11. <u>Use of This Agreement.</u> This Agreement may not be used in any action or proceeding of any type or kind, except as necessary for the Parties to enforce the terms of the Agreement itself.

12. <u>Modifications.</u> This Agreement may not be changed orally, and no modification, amendment or waiver of any of the provisions contained in this Agreement, nor any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any party hereto unless made in writing and signed by such party.

13. <u>Governing Law.</u> This Agreement shall be subject to, governed by, and interpreted in accordance with the laws of the State of Arizona except to the extent preempted by federal law, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Arizona or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Arizona. Each party consents to jurisdiction in Arizona for the purpose of any litigation relating to this Agreement and agrees that any such litigation shall be conducted in the courts of the State of Arizona, including the federal court of the United States for the District of Arizona. The prevailing party in any legal action or proceeding between the Parties for enforcement of the terms and provisions of this Agreement shall be awarded, in addition to damages or other relief, that prevailing party's reasonable costs and expenses, including but not limited to taxable costs and reasonable attorneys' fees.

14. <u>Assignment.</u> This Agreement shall inure to the benefit of, and shall be binding upon, (i) Paramount, Dr. Phillip C. McGraw, Harpo Productions, and Oprah Winfrey and the Releasees and their successors and assigns, and (ii) Mr. Sutz and his executors, administrators, heirs and

legal representatives. Mr. Sutz may not sell or otherwise assign any rights, obligations or benefits under this Agreement, and any attempt to do so shall be void, except in accordance with the laws of descent and distribution.

15. Entire Agreement. This Agreement contains the entire agreement among the parties and, except as provided herein, supersedes and terminates any and all previous agreements between them, whether written or oral.

16. No Reliance. In making and executing this Agreement, the parties hereto, and each of them, have not relied upon any statement or representation, oral or written, made by any party or parties to this Agreement with regard to any of the facts involved in any dispute or possible dispute between the parties hereto, or with regard to any of their rights or asserted rights, or with regard to advisability of making and executing this Agreement, unless specifically mentioned herein.

17. No Coercion. The Parties acknowledge that they enter into this Agreement of their own free will, that they have not been pressured or coerced in any manner whatsoever into signing this Agreement, and that they have been represented by counsel of their choice and have consulted with their counsel prior to signing this Agreement.

18. No Admission of Liability. This Agreement is not and shall not in any way be construed as an admission by Paramount, Dr. Phillip C. McGraw, Harpo Productions, and Oprah Winfrey or any of their directors, officers, agents, employees, parents, subsidiaries, partners, affiliates, or representatives, past or present, or any of Paramount's or Harpo Production's predecessors or successors of the truth of any of the allegations in the Action or that they or any of them violated any federal, state or local law, or other statute or regulation or common law or any other legal or equitable obligation they have or ever had to Mr. Sutz or any other person. Rather, this Agreement constitutes the good faith settlement of disputed claims.

19. Notices. Signed and dated copies of this Agreement, or any notices, should be sent by mail, courier, or facsimile to:

> Nicole A-J. Gustafson, Esq.
> Morgan, Lewis & Bockius LLP
> 300 South Grand Avenue, Twenty-Second Floor
> Los Angeles, CA 90071
> Fax: (213) 612-2501

20. Severability. In the event any provision of this Agreement shall be held to be void, voidable, unlawful or, for any reason, unenforceable, the remaining portions shall remain in full force and effect. The unenforceability or invalidity of a provision of this Agreement in one jurisdiction shall not invalidate or render that provision unenforceable in any other jurisdiction.

21. Specific Enforcement. The parties agree that this Agreement may be specifically enforced in court and may be used as evidence in a subsequent proceeding in which any of the parties allege a breach of this Agreement. In the event any action, suit or other proceeding is brought to interpret, enforce or obtain relief from a breach of this Agreement, the prevailing

party shall recover all such party's costs, expenses and attorneys' fees incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions therefrom.

**MR. SUTZ UNDERSTANDS THAT THIS AGREEMENT RELEASES ANY AND ALL CLAIMS AND RIGHTS, AND THAT BY SIGNING THIS AGREEMENT AND RELEASE, MR. SUTZ ACKNOWLEDGES AND AFFIRMS THAT: (1) HE IS COMPETENT; (2) HE WAS AFFORDED A REASONABLE TIME PERIOD TO REVIEW AND CONSIDER THIS AGREEMENT AND HAS BEEN ADVISED TO DO SO WITH AN ATTORNEY OF HIS CHOICE; (3) HE HAS READ AND UNDERSTANDS AND ACCEPTS THIS AGREEMENT AS FULLY AND FINALLY RESOLVING, WAIVING AND RELEASING ANY AND ALL CLAIMS AND RIGHTS WHICH HE MAY HAVE AGAINST DEFENDANTS AND THE RELEASEES AS SET FORTH ABOVE, INCLUDING, WITHOUT LIMITATION, ANY AND ALL CLAIMS AND RIGHTS, INCLUDING ANY CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT OR ANY RELATED STATE LAW CLAIMS; (4) NO PROMISES OR INDUCEMENTS HAVE BEEN MADE TO HIM EXCEPT AS SET FORTH IN THIS AGREEMENT; AND (5) HE HAS SIGNED THIS AGREEMENT FREELY, KNOWINGLY AND VOLUNTARILY, INTENDING TO BE LEGALLY BOUND BY ITS TERMS.**

_____
Neal David Sutz

Date: _10 - 15 - 04_____

Subscribed and sworn to before me
this _15_ th day of October, 2004.

_____
Notary Public

OFFICIAL SEAL
MAUD CHESNUTT
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Dec. 11, 2005

PARAMOUNT PICTURES CORPORATION

By: _____
Rina E. Wallack, Esq.

Date: _10 / 9 / 04_____